UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

==================================
|                                                                     | : |            |
| CHIFFON DAVIS, on behalf of herself and                             | : |            |
| a class of those similarly situated,                                | : | Case No.:  |
|                                                                     | : |            |
|     Plaintiff,                                  | : | Judge:     |
|                                                                     | : |            |
|     vs.                                         | : |            |
|                                                                     | : |            |
| NEW YORK CITY HOUSING AUTHORITY                                     | : |            |
| and OYESHOLA OLATOYE, in her                                        | : |            |
| personal capacity, and in her official capacity                     | : |            |
| as Chairperson of the New York City Housing                         | : |            |
| Authority,                                                          | : |            |
|                                                                     | : |            |
|     Defendants.                                 | : |            |
|                                                                     | : |            |
==================================

**COMPLAINT**

Plaintiff, Chiffon Davis, (hereinafter "Plaintiff"), by and through her attorneys Langone, Batson & Lavery, LLC, individually and on behalf of all others similarly situated, files this Complaint against Defendants, New York City Housing Authority, ("NYCHA"), and OYESHOLA OLATOYE, ("Olatoye"), NYCHA Chairperson, individually and in her official capacity (collectively Defendants). Plaintiff seeks a declaration that Defendants are in violation of federal law by not providing reliable and adequate heat to public-housing residents, and seeks damages for herself and the Class for Defendants' violations of the Constitution or laws of the United States and the "rights, privileges, or immunities" secured thereby.

1. Residents of NYCHA public housing are enduring a home-heating crisis that has left tens of thousands without adequate heat, and often no heat, in their apartments.

2. This crisis is the result of NYCHA's customs, policies, and practices that have left the agency chronically understaffed, inadequately trained, and recklessly indifferent to heating

1

complaints by residents of New York public housing. Indeed, the incompetence, corruption, and indifference is so entrenched in NYCHA that its Chairperson Defendant Olatoye has been "cooking the books" on such complaints by closing them as "resolved" without actually restoring heat to the units in question. This is consistent with NYCHA's custom, policy and practice to engage in a "code of silence" regarding its unsafe and inhabitable housing conditions – the most recent manifestation of which was Olatoye's misrepresentations to HUD about lead paint inspections. Any reasonable state actor should have known that such the customs, policies, and practices alleged herein would lead to the present emergency.

3. What is happening this year is even worse than the indifference in prior years that led public advocate Letitia James to sue NYCHA in New York State Court on behalf of NYCHA's residents. That suit lead to a stipulation whereby promises were made to adequately train NYCHA staff, and to ensure that NYCHA homes are adequately heated. That stipulation has expired, and the promises made therein broken.

4. When a municipal actor systematically deprives citizens of their rights under the Constitution and federal law, and when the State institutions have found themselves unwilling or unable to protect these rights, the federal courts are required to step in.

5. This case is brought in order to allow the Court to step in and address the deepening NYCHA home heating crisis, to hold New York City's public officials to account, and to heat the homes of 60,000 poor people enduring a record-cold winter season.

## **JURISDICTION AND VENUE**

6. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding Plaintiff's rights under 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201.

7. This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because it seeks a declaration regarding Plaintiff's rights to habitable living conditions under federal law, as secured by 24 CFR 5.703.

8. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful housing practices alleged herein, occurred in this district.

## THE PARTIES

9. Plaintiff, CHIFFON DAVIS, (hereinafter "Plaintiff" or "Ms. Davis"), is a citizen of the United States, and is and was at all relevant times, a citizen of the State of New York.

10. Defendant, New York City Housing Authority, ("NYCHA"), is a public housing agency in the City of New York which provides subsidized housing to low-income residents throughout the city. Over half-a million New York City citizens live in one of over 2600 NYCHA buildings. NYCHA receives federal funding from the United States Department of Housing and Urban Development (HUD).

11. Defendant OYESHOLA OLATOYE, ("Olatoye"), is a New York resident and is sued in her personal and official capacity as NYCHA Chairperson, for both her own conduct and for the conduct of NYCHA.

## FACTS COMMON TO ALL COUNTS

12. Plaintiff lives in an apartment in the Andrew Jackson Houses, a NYCHA-owned and operated public-housing development in the Bronx, New York.

13. Plaintiff has been without heat in her apartment for weeks, as New York suffered multiple "arctic blasts" of freezing temperatures.

14. During recent periods of below-freezing outdoor temperatures, the temperature in Plaintiff's apartment seldom exceeded 50 degrees, and was often freezing or below freezing. Plaintiff has felt like she was outside, while in her own home.

15. Due to these cold temperatures, Plaintiff is often left no recourse but to sleep in heavy winter clothing, shower less frequently, and endure extreme discomfort.

16. Plaintiff has repeatedly informed NYCHA about the lack of adequate heat in her apartment.

17. On information and belief, the heating system in Plaintiff's apartment complex is defective or otherwise unable to maintain adequate heat within Plaintiff's unit during periods of sub-freezing outdoor temperatures.

18. To date, NYCHA has not made any reasonable efforts to repair or replace the heating system, or otherwise ensure the temperature in Plaintiff's apartment remains above minimum standards of habitability.

19. Under federal regulations, "HUD housing must be decent, safe, sanitary and in good repair." HUD housing must continue to adhere to state and local codes. Furthermore, the term decent, safe, and sanitary dwelling means a dwelling which has heating as required by climatic conditions.

20. Plaintiff and class members have been deprived of their federal and state rights to decent, safe and habitable housing.

21. As a result of this deprivation, Plaintiff, her neighbors, and tens of thousands of class members have suffered physical discomfort, emotional distress, increased illness, and decreased hygiene, as well as deprivation of rent paid for living conditions that do not meet minimum standards of habitability.

22. 42 U.S.C. § 1983 provides, in pertinent part, that a private right of action exists for anyone deprived of "rights, privileges, or immunities" secured by "the Constitution or laws" of the United States.

23. Federal Regulation 24 CFR 5.703 vests in public housing recipients a federally-protected right to living conditions in public housing that meet the requirements imposed by state and local housing laws and regulations – here, NYC Administrative Code § 27-209 and New York City Health Code § 131.07 regarding the minimum acceptable temperature for an occupied housing units during the winter months.

24. The systemic failure of NYCHA to adequately maintain and repair boilers in public housing complexes throughout New York City violates NYC Administrative Code § 27-209 and New York City Health Code § 131.07, and has subjected tens of thousands of low-income New Yorkers to untenably cold conditions within their public housing units.

25. This continuing failure has deprived each of those New Yorkers, including Plaintiff, of their federally-protected right to public housing living conditions that are in compliance with NYC Administrative Code § 27-209 and New York City Health Code § 131.07.

26. For years, NYCHA public housing residents have suffered through brutal winters without heat in their homes.

27. Plaintiff Chiffon Davis is a typical victim of the inhabitable conditions in the Jackson Houses in the Bronx, as described herein.

28. On January 1, 2018, the temperature dipped to 7 degrees. Plaintiff and other residents of the Jackson Houses were without adequate heat during this period, along with thousands of other NYCHA residents in other areas.

29. News of this crisis has been widely reported in the media.

30. NYCHA was previously the subject of home heating litigation, ending in an agreement by NYCHA to maintain adequate heating standards and retrain employees.

31. According to a press release from New York City Public Advocate Letitia James, published on March 29th, 2016, "For too long, New Yorkers in our public housing have been denied access to safe, decent and warm homes, [...]. Because of our settlement, NYCHA will no longer be able to deny tenants heart when the temperature outside is well below freezing. Today is a major win for public housing residents as we remain steadfast in our fight to ensure that every new Yorker has fair and decent housing. The Terms of the settlement required in part that: From October 1st through May 31st between 6:00am and 10:00pm the inside of buildings must be heated to at least 68 degrees Fahrenheit when the outside temperature is below 55 degrees, and that between 10:00 pm and 6:00am the inside of the buildings must be heated at least 55 degrees when the outside temperature is below 40 degrees.

32. But NYCHA has failed to live up to the settlement agreement, and a new home heating crisis has emerged this year – the very next winter after the expiration of that agreement.

33. Indeed, news reports of thousands of New York City public housing residents without adequate heat have dominated local headlines through 2018.

34. An article published in the NY Daily News on December 29th, 2017 reported:
> "Home is where the heat is- but apparently not for a number of New Yorkers in public housing. As frigid temperatures continue to grip the city, the city Public Advocate's office says its received some 30 complaints from New York City Housing Authority residents saying they're without heat. The office says it's logged complaints over the past week and a half from 11 complexes in the Bronx, Brooklyn and Manhattan. The complaints came from buildings including the Sotomayor Houses in the Bronx, the Marcy Houses in Brooklyn and the Alfred E.

Smith Houses in Manhattan. A NYCHA spokeswoman,… Jasmine Blake noted a $17 billion capital deficit means many of the boilers, which are 'well past their life expectancy,' are not being replaced.

35. The NY Post reported "Some NYCHA complexes still without heat after 'bomb cyclone'" on January 5th, 2018 and stated:

"A day after residents of a Queens public-housing complex had to endure the "bomb cyclone" with little or no heat, the heat was reported out at several other developments. Buildings at six complexes in Manhattan, Brooklyn, the Bronx and Staten Island had open heat work orders by Friday afternoon, according to NYCHA spokeswoman Jasmine Blake. The Office of Public Advocate Letitia James had complaints of heat and/or hot water being off another 12 NYCHA developments. On Thursday at the sprawling NYCHA run Woodside Houses, residents of 1,300 apartments had no heat or hot water for at least part of the storm. Some endangered themselves by cranking up their ovens and stoves as a source of heat to stay warm…. The mayor admitted: "the infrastructure of NYCHA is in very tough shape."

36. According to an ABC 7 article published on January 6th, 2018:

"It is beyond unbearable and inhumane to not have heat in sub-zero temperatures, but NYCHA residents across the city say they have been suffering through the cold snap with no relief in sight.. It is a heating crisis that NYC comptroller Scott Stringer says his officer first identified in 2015, and it has since gotten worse with NYCHA boilers five times more defective than the citywide average. 'If you live in NYCHA there's a 40 percent chance you're in a building with a defective boiler, but for people who don't live in NYCHA it's just seven

percent. This is discrimination, this is outrageous and enough is enough,' said Stringer."

37. On January 10th, 2018, an article in the NY Post entitled "City Council members demand de Blasio address failing NYCHA heating", stated: Forty fired-up City Council members have signed a letter demanding Mayor de Blasio "finally" address the New York City Housing Authority's failing heating systems. Bronx Councilman Ritchie Torres, the letter's author, slammed de Blasio for not sufficiently addressing what he described as a 'humanitarian crisis' — shivering tenants at numerous NYCHA buildings lacking heat."

38. Thousands of people are currently being deprived of their federally-secured rights to a heated home in public housing.

39. Under 24 CFR 5.703 - Physical condition standards for HUD housing that is decent, safe, sanitary and in good repair (DSS/GR), it states in relevant part,

> § 5.703 Physical condition standards for HUD housing that is decent, safe, sanitary and in good repair (DSS/GR). HUD housing must be decent, safe, sanitary and in good repair. Owners of housing described in § 5.701(a), mortgagors of housing described in § 5.701(b), and PHAs and other entities approved by HUD owning housing described in § 5.701(c), must maintain such housing in a manner that meets the physical condition standards set forth in this section in order to be considered decent, safe, sanitary and in good repair….
>
> (g) Compliance with State and local codes. The physical condition standards in this section do not supersede or preempt State and local codes for building and maintenance with which HUD housing must comply. HUD housing must continue to adhere to these codes.

40. Under, 24 CFR 5.701 – Applicability, it states,

> § 5.701 Applicability.
> (a) This subpart applies to housing assisted under the HUD programs listed in 24 CFR 200.853(a).
> (b) This subpart applies to housing with mortgages insured or held by HUD, or housing that is receiving assistance from HUD, under the programs listed in 24 CFR 200.853(b). (c) This subpart also applies to Public Housing (housing receiving assistance under the U.S. Housing Act of 1937, other than under section 8 of the Act).

(d) For purposes of this subpart, the term "HUD housing" means the types of housing listed in paragraphs (a), (b), and (c) of this section.

41. Under 25 CFR 700.55 - Decent, safe, and sanitary dwelling, it states in relevant part:

> § 700.55 Decent, safe, and sanitary dwelling.
> (a) General. The term decent, safe, and sanitary dwelling means a dwelling which –
>
> (6) Has heating as required by climatic conditions;

42. NYC Administrative Code § 27-209 provides, "Minimum temperature to be maintained," states in relevant part,

> a. During the period from October first through May thirty-first, centrally supplied heat, in any dwelling in which such heat is required to be provided, shall be furnished so as to maintain, in every portion of such dwelling used or occupied for living purposes: 1) between the hours of six a.m. and ten p.m., a temperature of at least sixty-eight degrees Fahrenheit whenever the outside temperature falls below fifty-five degrees; and 2) between the hours of ten p.m. and six a.m., a temperature of at least fifty-five degrees Fahrenheit whenever the outside temperature falls below forty degrees.

43. New York City Health Code § 131.07(c) provides that,

"the minimum temperatures required by subdivision (a) of this section shall be maintained as follows:"

(1) In a dwelling, during the months between October first through May thirty-first, centrally between the hours of six a.m. and ten p.m., a temperature of at least sixty-eight degrees Fahrenheit whenever the outside temperature falls below fifty-five degrees; and 2) between the hours of ten p.m. and six a.m., a temperature of at least fifty-five degrees Fahrenheit whenever the outside temperature falls below forty degrees.

44. Defendants have failed to provide heating as required federally by climatic conditions and failed to maintain heat temperatures as required by local law.

45. This failure is the inevitable result of certain policies and practices promulgated and engaged in by directly Defendants over the prior months and years leading up to the current crisis, which are described below.

46. First, Defendants have consistently maintained boiler maintenance staffing at levels that are woefully insufficient to meet seasonal emergency repair demand.

47. Specifically, despite the NYCHA heating scandal growing in severity over the past several years, and despite even the aforementioned 2016 state court lawsuit and settlement agreement, NYCHA's boiler maintenance staff has significantly *decreased* over that period.

48. As recently as October of 2017, of the eve of the present crisis, Defendant Olatoye presided over the reassignment of more than 100 boiler maintenance staff to other positions replacement.

49. As a result of these staffing practices, NYCHA has not responded to emergency heating repair requests, including those made by Plaintiff, for weeks – leaving NYCHA residents to fend for themselves.

50. Indeed, NYCHA has admitted the role of its chronic boiler technician understaffing in causing the present crisis in statements made to news media.

51. Moreover, the avoidable and foreseeable staffing shortage has also prevented NYCHA from making repairs and replacements during summer months, when substantial maintenance work on heating systems is meant to be done, leading to a backlog of needed repairs that NYCHA now claims to be unable to afford.

52. Defendants Olatoye and NYCHA maintain a policy of prematurely closing heating maintenance request tickets in order to create the appearance that NYCHA is far more responsive to such emergency requests than it actually is, obscuring the full extent of the crisis from the public and lawmakers, while refusing to actually respond to such requests, including, on information and belief, requests made by Plaintiff.

53. Specifically, on information and belief, Olatoye and NYCHA instruct their employees to mark heating maintenance request tickets as closed within hours of being opened,

with a notation that heat was restored, when in fact heat was not restored and no effort was made to address the complaint, thus depriving residents like Plaintiff the actual repair services they require.

54. NYCHA under Defendant Olatoye has a history of falsifying such records. Just last year, Olatoye was accused of knowingly giving federal authorities fabricated records of mandatory lead inspections, when no such inspections took place, in a scheme some have suggested warrants criminal prosecution.

55. The City has ratified this policy through public statements on the heating crisis, in which, for instance Mayor de Blasio lauds NYCHA for the reported (fraudulent) hours-long repair turnaround time and misrepresents the agency's responsiveness to heating repair requests.

56. NYCHA's repair turnaround time figures are inaccurate and unreliable due to its policy of prematurely closing repair tickets, and its code of silence and cover-up, which is its custom and policy under Olatoye.

57. In addition to the above-referenced policy on the treatment of repair request tickets, NYCHA and Olatoye engage in a policy of failing to adequately train employees at all levels to respond to complaints of inadequate heat as federal and state law require.

58. On information and belief, NYCHA has failed to train employees to be aware of the minimum temperature requirements imposed by NYC Administrative Code § 27-209 and New York City Health Code § 131.07(c), and the federally-secured obligation to adhere to those standards and otherwise provide habitable living conditions to residents of public housing, as evidenced by those employees' chronic unwillingness and/or inability to promptly honor heating repair requests.

59. NYCHA has in the past admitted to the role its failure to adequately train its employees has played in the ongoing public housing heating crisis, as evidenced by the terms of the above-referenced settlement requiring top-to-bottom retraining.

60. Despite being admittedly aware of the importance of proper training, and despite being required to conduct such training, it did not do so

## CLASS ALLEGATIONS

61. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Rule 23(b)(2) and 23(b)(3) class is defined as, "All current residents of NYCHA-owned public housing."

62. *Numerosity*. The classes are so numerous that joinder of all of their members is impracticable. Upon information and belief, the classes are comprised of more than 50,000 individuals. The putative class members are unlikely to press their claims on an individual basis because as residents of public housing, all putative class members have limited incomes, and the value of their individual claims is modest.

63. *Commonality and Predominance*. Common questions of fact and law predominate over questions affecting individual class members. Questions of law and fact common to classes include whether NYCHA provided heat as required by federal and local law.

64. *Typicality and Adequacy*. Plaintiff's claims are typical of the class as a whole. All of the Plaintiffs' claims arise from the same unlawful practices: CHA's failure to heat it units in compliance with federal and local law. Plaintiff does not present claims that are unique to herself and instead bring claims typical to the class members. Proposed class representative will fairly and adequately protect the interests of the classes as a whole. Plaintiff does not have any interests antagonistic to those of other class members. By filing this action, Plaintiff has displayed an

interest in vindicating her rights, as well as the claims of others who are similarly situated. Plaintiffs are represented by experienced counsel.

65. *Superiority*. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it will:

> a. avoid the heavy burden of multiple, duplicative suits;
> b. avoid the virtually impossible task of getting all class members to intervene as party-plaintiffs in this action;
> c. allow the Court, upon adjudication of defendant's liability, to determine the claims of all class members; and
> d. allow the Court to enter appropriate final monetary relief with respect to the classes as a whole.

66. *Injunctive and Declaratory Relief*. NYCHA has acted or refused to act on grounds that apply generally to the Rule 23(b)(2) class as a whole, so that final injunctive or declaratory relief is appropriate respecting the class as a whole. More specifically, NYCHA has refused to heat homes in compliance with federal and state law.

## **CLAIM FOR RELIEF - 42 U.S.C. § 1983**

67. Plaintiff realleges and incorporates by reference paragraphs 1-66 as if fully stated herein.

68. Plaintiffs and the Class were deprived by NYCHA of rights and privileges secured by "the Constitution or laws" of the United States as alleged about and specifically 25 CFR 700.55.

69. This deprivation occurred under color of state law and pursuant to custom, procedure, and policy of NYCHA and Olatoye.

70. Specifically, NYCHA and Olatoye have deprived Plaintiff of the right to a heated home in compliance with local and federal regulations cited herein.

71. Collecting rent under these circumstances deprives citizens of property without due process of law in violation of the Constitution. Plaintiff seeks a declaration that she and the class members are entitled to without rent.

72. Plaintiff seeks declaratory relief that Defendants have violated 25 CFR 700.55 and damages for deprivation of these rights and privileges.

WHEREFORE, Plaintiff asks the Court to enter judgment against Defendant and issue an order: Entering judgment in favor of Plaintiff and the class, award damages in accordance with the evidence and law, and declare Defendants to be in violation of federal law and the Constitution of the United States.

Respectfully Submitted<br>
s/ James P. Batson<br>
One of Plaintiff's Attorneys

## JURY DEMAND

Plaintiff demands trial by jury on all issues as to which a jury trial is available.

s/ James P. Batson<br>
One of Plaintiff's Attorneys

James P. Batson, Esq.
Christopher V. Langone, Esq.*
Langone Batson and Lavery, LLC
520 White Plains Road, Ste. 500
Tarrytown, New York, 10591
(312) 344-1945

---

\* Mr. Langone, Mr. Batson's law partner, will be seeking pro hac vice admission promptly after the case is assigned.