UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHIFFON DAVIS, *on behalf of herself and a class of those similarly situated*,

                                        Plaintiff,

                    -v-

NEW YORK CITY HOUSING AUTHORITY and OYESHOLA OLATOYE, *in her personal capacity, and in her official capacity as Chairperson of the New York City Housing Authority*,

                                        Defendants.

18-CV-459 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Chiffon Davis brings this putative class action against Defendants the New York City Housing Authority ("NYCHA") and the Chairperson of NYCHA, Oyeshola Olatoye, in connection with their alleged failure to provide adequate heating to residents of NYCHA public housing buildings.

Defendants now move to dismiss the operative complaint, asserting that this action is essentially "an attempt to enforce the 'warranty of habitability,'" which cannot be done through federal law. (Dkt. No. 23 at 3.) For the reasons that follow, the motion to dismiss is granted in part and denied in part.

I.      Background

The following facts are taken from the First Amended Complaint (Dkt. No. 16 ("FAC")) and are presumed true for the purposes of this motion.

Defendant NYCHA is the City of New York's public housing agency. With the assistance of federal funds from the U.S. Department of Housing and Urban Development ("HUD"), NYCHA provides subsidized housing to over half a million residents of New York

1

City in over 2600 buildings.  (FAC ¶ 12.)  Plaintiff Chiffon Davis ("Davis") "lives in an apartment in the Andrew Jackson Houses, a NYCHA-owned and operated public-housing development in the Bronx."  (FAC ¶ 14.)

In the winter of early 2018, New York City "suffered multiple 'arctic blasts' of freezing temperatures."  (FAC ¶¶ 15, 18, 27.)  Due to inadequate heating, the "temperature in [Davis's] apartment seldom exceeded 50 degrees" for weeks during this period, and "was often freezing or below freezing."  (FAC ¶¶ 15–16.)  Specifically, during and after the storms of March 2 and March 7, 2018, the estimated temperature within her apartment was "approximately 40 degrees Fahrenheit."  (FAC ¶ 18.)  During this period, Davis's apartment would also occasionally be left without hot water, including for a four-day stretch in February of 2018.  (FAC ¶ 19.)

Davis alleges that the heating system in her apartment complex cannot maintain adequate heat in her apartment during periods of sub-freezing outdoor temperatures, and NYCHA has not made reasonable efforts to ensure that the temperature in her apartment "remains above minimum standards of habitability."  (FAC ¶¶ 22–23.)  Furthermore, Davis alleges that this is a recurring problem in NYCHA's buildings, and causes "hundreds of thousands" of residents in public housing complexes to "suffer[] physical discomfort, emotional distress, increased illness, and decreased hygiene, as well as deprivation of rent paid for living conditions that do not meet minimum standards of habitability."  (FAC ¶¶ 21, 24–25, 37.)

According to Davis, certain policies and practices of Defendants have caused this public-housing heating crisis, specifically insufficient levels of boiler maintenance staff, a "policy of prematurely closing heating maintenance request tickets" to create the appearance that NYCHA is effectively handling the crisis, and failure to properly train employees.  (FAC ¶ 45; *see* FAC ¶¶ 38–53.)

On January 18, 2018, Davis initiated this action against NYCHA and its Chairperson, Oyeshola Olatoye ("Olatoye"). (Dkt. No. 1.) The operative complaint was filed on March 8, 2018, on behalf of a putative class of residents of NYCHA-owned public housing. (FAC ¶ 54.) The First Amended Complaint asserts three claims for relief, alleging: (1) deprivation of rights under 42 U.S.C. § 1437 and applicable regulations, pursuant to 42 U.S.C. § 1983 (FAC ¶¶ 60–75); (2) violation of substantive due process rights under the Constitution, pursuant to 42 U.S.C. § 1983 (FAC ¶¶ 76–94); and seeking (3) a declaratory judgment that the residents' federal rights to public housing in compliance with minimum temperature requirements have been violated, under 28 U.S.C. § 2201 (FAC ¶¶ 95–102).

Defendants subsequently moved to dismiss the First Amended Complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). (Dkt. Nos. 18 & 22.)[1]

## II.     Legal Standards

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept as true all well-pleaded factual allegations in the complaint and "draw[] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (citation omitted).

The burden is on the plaintiff to prove by a preponderance of the evidence that subject

---

[1]     Due to docketing issues, Defendants' motion to dismiss was filed twice, and the briefing on the docket was filed out of order. The Court is treating Docket Numbers 18 and 22 as a single motion and disregarding the order in which the briefs were filed.

matter jurisdiction exists. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court must accept as true all the material factual allegations contained in the complaint, but a court is "not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). "A district court properly dismisses an action under Rule 12(b)(1) if the court 'lacks the statutory or constitutional power to adjudicate it.'" *Garcia v. Lasalle Bank NA.*, No. 16 Civ. 3485, 2017 WL 253070, at *3 (S.D.N.Y. Jan. 19, 2017) (quoting *Cortlandt Street Recovery Corp. v. Hellas Telecomm'ns S.A.R.L.*, 790 F.3d 411, 416–17 (2d. Cir. 2015)).

## III.    Discussion

Defendants seek dismissal of Davis's First Amended Complaint in its entirety. The Court addresses Defendants' motion in five parts, delineated by the specific claim or demand at issue: (A) the § 1983 claim premised on the violation of rights under federal law; (B) the § 1983 claim premised on violations of substantive due process; (C) the declaratory judgment claim; (D) claims against individual Defendant Olatoye; and (E) the demand for punitive damages.

### A.    Section 1983 Claim Premised on Right Under Federal Law

In her first claim, Davis alleges that "NYCHA and Olatoye have deprived Plaintiff and class members of the right to a safe and habitable heated home in compliance with federal law and federal regulations," actionable under § 1983. (FAC ¶ 63.) Section 1983 provides a cause of action against persons who, acting under color of state law, subject individuals to the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

The federal law securing the right that has been violated, according to Davis, is supplied by the United States Housing Act of 1937, 50 Stat. 888, 42 U.S.C. § 1437 *et seq.* In particular,

4

Davis relies on § 1437(a)—which sets out the declaration of policy of federal housing law—and § 1437d(l)—which governs the nature of leases that must be employed by public housing agencies. (FAC ¶¶ 65–67.) And the federal regulation on which Davis relies, 24 C.F.R. § 5.703(g), requires that HUD-funded public housing comply with "state and local housing laws and regulations." (FAC ¶ 69.) Davis contends that the failure of NYCHA housing to comply with "NYC Administrative Code § 27-20[2]9 and New York City Health Code § 131.07 regarding the minimum acceptable temperature for an occupied housing unit during the winter months" thus violates 24 C.F.R. § 5.703(g), and the resultant deprivation of rights is actionable under § 1983. (FAC ¶¶ 69–73.)

Defendants argue that this first claim must be dismissed because the statutory and regulatory provisions invoked "do not create a statutory right to adequate housing which can be enforced in federal court through an action" under § 1983. (Dkt. No. 23 at 4; *see id.* at 8.)

"[Section] 1983 actions may be brought against state actors to enforce rights created by federal statutes as well as by the Constitution." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 279 (2002). "In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). In order for a particular statutory provision to be enforceable through § 1983, then, the statutory provision at issue must "give[] rise to a federal right," and Congress must not have "specifically foreclosed a remedy under § 1983" for the deprivation of this right. *Id*. at 340–41 (citation omitted).

Courts traditionally employ three factors "to determine the existence of a federal right enforceable under Section 1983":

First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected

> by the statute is not so "vague and amorphous" that its enforcement would strain
> judicial competence. Third, the statute must unambiguously impose a binding
> obligation on the States. In other words, the provision giving rise to the asserted
> right must be couched in mandatory rather than precatory terms.

*Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 136 (2d Cir. 2010) (quoting *Blessing*, 520

U.S. at 340–41). Notwithstanding these factors, however, "courts should not find a federal right

. . . where other considerations show that Congress did not intend to create federal rights

actionable under § 1983." *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 322 (2d Cir. 2005)

(noting that the Supreme Court in *Gonzaga* "rejected an interpretation of *Blessing* that 'our cases

permit anything short of an unambiguously conferred right to support a cause of action brought

under § 1983'" (quoting *Gonzaga*, 536 U.S. at 283)).

To determine whether Davis is properly suing under § 1983 for the deprivation of a right

secured by federal law, the Court applies this standard to each statutory and regulatory provision

invoked by Davis—42 U.S.C. § 1437(a)(1)(A), 42 U.S.C. § 1437d(l)(3), and 24 C.F.R. § 5.703.

### 1. Federal Right Under § 1437(a)(1)(A)

Davis first relies on 42 U.S.C. § 1437(a)(1)(A) as the source of a federal right on which

to base her § 1983 claim. Section 1437(a)(1)(A) provides that:

> It is the policy of the United States . . . to promote the general welfare of the Nation
> by employing the funds and credit of the Nation, as provided in this chapter . . . to
> assist States and political subdivisions of States to remedy the unsafe housing
> conditions and the acute shortage of decent and safe dwellings for low-income
> families.

42 U.S.C. § 1437(a)(1)(A).

This provision pertains to the general policy of the federal government,[2] and the

---

[2]     Indeed, Davis specifically recognizes that § 1437 sets forth the "broad policy
goals" of the Housing Act. (Dkt. No. 21 at 14.) Furthermore, the Court notes that she relies on
this provision primarily to establish that "lower-income families . . . are the intended
beneficiaries of the Housing Act" (Dkt. No. 21 at 15), without demonstrating how this provision

relationship between the federal government and the states with respect to ensuring affordable and safe housing. But, as relevant under the third *Blessing* factor, this statement of policy does not "unambiguously impose a binding obligation on the States." *Blessing*, 520 U.S. at 341. Considering the first *Blessing* factor, the Court recognizes that the provision is "phrased in terms of the person benefited," *Torraco*, 615 F.3d at 137 (citation omitted)—namely "low-income families." However, it lacks the kind of "individually focused terminology" that constitutes "'rights-creating' language." *Gonzaga*, 536 U.S. at 287 (citation omitted). Instead, the provision has an "'aggregate' focus" on housing availability and conditions as a whole, rather than a "concern[] with 'whether the needs of any particular person have been satisfied.'" *Id.* at 288 (quoting *Blessing*, 520 U.S. at 343.)

Furthermore, a number of courts to have considered this provision have concluded that it does not create a federal right enforceable under § 1983.[3] *See, e.g.*, *Johnson v. City of Detroit*, 446 F.3d 614, 626 (6th Cir. 2006) (agreeing with lower court that "[n]othing in these provisions [including § 1437(a)(1)(A)] establishes a clear and unambiguous intent by Congress to create privately enforceable rights under § 1983 to ensure compliance with housing quality standards" (citation omitted)); *Perry v. Hous. Auth. of City of Charleston*, 664 F.2d 1210, 1213 (4th Cir. 1981) (finding "no indication in the legislation"—including § 1437—"or in its history that Congress intended to create in public housing tenants a federal right of action against their municipal landlords"); *McField ex rel. Ray v. Phila. Hous. Auth.*, 992 F. Supp. 2d 481, 487 (E.D.

---

alone could be read to create an unambiguous, enforceable federal right to adequately heated housing.

[3]      In *Gonzaga*, the Supreme Court explained that "the initial inquiry" in statutory right cases under § 1983—"whether the statute confers any right at all—is no different from the initial inquiry in an implied right of action case." 536 U.S. at 285. Accordingly, this Court's analysis relies on both § 1983 cases and implied right of action cases where the focus of the inquiry was whether Congress intended to create a federal right.

Pa. 2014) ("[Section 1437(a)] clearly speaks in terms of general policy, and it has consistently been held not to create a private right."); *Green v. Konover Residential Corp.*, No. 95 Civ. 1984, 1997 WL 736528, at *8–9 (D. Conn. Nov. 24, 1997) (holding that the "broad policy statements" of § 1437 do not give residents a "private right of action against their landlords for failure to maintain the premises in a safe and sanitary condition").

In light of this persuasive authority and the analysis above, the Court holds that § 1437(a)(1)(A), by itself, does not create a federal right to adequately heated public housing that can give rise to an action under § 1983.

### 2.    Federal Right Under § 1437d(l)(3)

Next, Davis relies on 42 U.S.C. § 1437d(l)(3) to supply the federal right that is the basis for her § 1983 claim. Section 1437d(l)(3) provides: "Each public housing agency shall utilize leases which . . . obligate the public housing agency to maintain the project in a decent, safe, and sanitary condition." 42 U.S.C. § 1437d(l)(3).

Applying the *Blessing* factors here would appear to provide Davis with a good argument that this provision gives residents of public housing an actionable individual right to a lease that contains language requiring NYCHA to maintain its buildings up to certain standards. *See Davis v. City of New York*, 902 F. Supp. 2d 405, 442 (S.D.N.Y. 2012) (holding that the preceding provision, § 1437d(l)(2), gives tenants "a right to a lease free from unreasonable terms and conditions" that is "actionable under section 1983"); *Stubenfield v. Chi. Hous. Auth.*, 6 F. Supp. 3d 779, 786 (N.D. Ill. 2013) (same). But the Court must focus on whether the particular provision at issue gives rise to the *specific right* of which a plaintiff claims deprivation. *See Blessing*, 520 U.S. at 342 (urging courts not to "paint[] with too broad a brush").

Here, Davis claims deprivation of the "right to a safe and habitable heated home." (FAC ¶ 63.) While § 1437d(l)(3) arguably creates the right to *a lease* with terms that obligates

NYCHA to maintain housing that is safe, habitable, and adequately heated, the text of this provision on its face does not create a right for residents to enforce *the violation* of such lease terms against NYCHA in federal court.  Indeed, "[e]very court to address this issue has determined that a habitable residence is not a right guaranteed by § 1437(d)(l)(3) [*sic*]."  *Paige v. N.Y.C. Hous. Auth.*, No. 17 Civ. 7481, 2018 WL 1226024, at *4 (S.D.N.Y. Mar. 9, 2018); *see Edwards v. Dist. of Columbia*, 821 F.2d 651, 653 n.2 (D.C. Cir. 1987); *Concerned Tenants Ass'n of Father Panik Vill. v. Pierce*, 685 F. Supp. 316, 322 (D. Conn. 1988); *cf. Davis*, 902 F. Supp. 2d at 442 (reasoning that the adjacent § 1437d(l)(2) does not permit a claim under § 1983 "that NYCHA has violated the terms or conditions of the lease").

Recognizing the countervailing weight of precedent, Davis asks the Court to "decline to adopt the faulty reasoning of [c]ourts who have foreclosed claims by public housing residents under Section 1983 for safe, decent and sanitary housing."  (Dkt. No. 21 at 20.)  But Davis has not provided a persuasive basis for distinguishing the cases that have declined to find an enforceable right to a habitable residence in § 1437d(l)(3).  (*See* Dkt. No. 21 at 12–21 (arguing that the provisions at issue create an enforceable right without citing or attempting to specifically distinguish the precedent on which Defendants rely).)

Instead, relying on *Wright v. City of Roanoke Redevelopment & Housing Authority*, 479 U.S. 418, 429 (1987), Davis argues that this case involves "contractual rights created by Congress," and because the right at issue "is a creature of federal statute," it should be enforceable in federal court.  (Dkt. No. 21 at 20–21.)  *Wright*, however, does not stand for this broad proposition.  Moreover, the differences between § 1437d(l)(3) and the provision at issue in *Wright* illustrate why the Court reaches a different result here.

In *Wright*, the plaintiffs claimed the deprivation of a federal right under the Brooke

Amendment to the Housing Act, which provided that a low income "family shall pay as rent for a dwelling unit assisted under this chapter" a certain percent of the family's income. 479 U.S. at 420 & n.2 (citation omitted). The Supreme Court reasoned that "[t]he Brooke Amendment could not be clearer: . . . tenants could be charged as rent no more and no less than 30 percent of their income. This was a mandatory limitation focusing on the individual family and its income." *Id*. at 430. The contractual right created by Congress, which plaintiffs sought to enforce in *Wright*, was unambiguously established by the statutory provision on its face. And the violation of this right—by overcharging rent—was thus actionable under § 1983.

Section 1437d(l)(3) creates a similarly unambiguous contractual right: a "mandatory limitation" on the types of leases that public housing authorities may utilize. *Id.* The violation of this right—by failing to include a term in a lease "obligat[ing] the public housing authority to maintain the project in a decent, safe, and sanitary condition," 42 U.S.C. § 1437d(l)(3)—is likely actionable under § 1983. But Davis seeks to enforce a right to habitable conditions that is one step removed from the text of the statutory provision. Section 1437d(l)(3) mandates that leases contain a term requiring the housing authority to ensure habitability, but does not provide tenants a right specifically against that habitability term's being breached. The precedents governing whether a statute creates a federal right enforceable under § 1983—which require rights to be created in "clear and unambiguous terms," *Gonzaga*, 536 U.S. at 290—simply do not allow the Court to make the inferential step that Davis's claimed right entails.

In reaching this result, the Court is mindful of the principle that, in general, "claims arising from deficient housing conditions do not involve a uniquely federal interest since the area[] of landlord-tenant law" is typically "the province of state courts and legislatures." *Williams v. N.Y.C. Hous. Auth.*, No. 07 Civ. 7587, 2009 WL 804137, at *9 (S.D.N.Y. Mar. 26,

2009) (internal quotation marks and citation omitted). Davis has recourse to New York state

courts, with their particular expertise in landlord-tenant law and the enforcement of covenants in

leases, to seek the remedy that § 1983, in conjunction with § 1437d(l)(3), does not afford.

Accordingly, where "[p]laintiffs do not claim that NYCHA failed to utilize [the] leases"

required by § 1437d(l)(3), but instead "allege that NYCHA failed to comply with the covenants

in those lease agreements," *Paige*, 2018 WL 1226024, at *4, this provision does not provide the

asserted individual right. Therefore, Davis's claims based on the alleged deprivation of a right to

adequate housing conditions and premised on § 1437d(l)(3) are not actionable under § 1983.

### 3.    Federal Right Under 24 C.F.R. § 5.703

Finally, Davis's first claim relies on 24 C.F.R. § 5.703 for the creation of a federal right.

(FAC ¶ 69.) The relevant regulatory provision requires that HUD-funded public housing comply

with "State and local codes for building and maintenance." 24 C.F.R. § 5.703(g). And the New

York City codes with which § 5.703(g) mandates compliance in turn require that New York City

housing units be maintained at a "minimum acceptable temperature . . . during the winter

months." (FAC ¶ 69; *see id.* ¶¶ 70–71.)

As the Second Circuit has made clear, however, a federal regulation is privately

enforceable under § 1983 only "if it invoke[s] a private right . . . that Congress through statutory

text created" and the right recognized by the regulation "extend[s] no further than the personal

right conferred by the plain language of the statute." *Taylor ex rel. Wazyluk v. Hous. Auth. of*

*City of New Haven*, 645 F.3d 152, 153 (2d Cir. 2011) (per curiam) (first alteration in original)

(internal quotation marks and citations omitted).[4]

---

[4]    Defendants made the point in their moving brief that "there is no private right of
action to enforce a regulation that creates obligations that are not imposed by the regulation's
controlling statute." (Dkt. No. 23 at 8.) In response, Davis disputed the state of the law,
contending that it is an open question in the Second Circuit whether a federal regulation alone

Here, the Court held above that the statutory provisions invoked by Davis—

§ 1437(a)(1)(A) and § 1437d(l)(3)—do not create an individual federal right to adequately

heated housing enforceable in federal court under § 1983.  The federal regulation at issue

therefore has no corresponding "personal right conferred by the plain language of the statute"

that it could supplement.  *Taylor*, 645 F.3d at 153.  Accordingly, this federal regulation and the

underlying temperature requirements in the New York City codes do not create a federal right to

housing of a certain temperature that would be actionable under § 1983.

\* \* \*

Overall, Davis has failed to identify an individual right to adequately heated housing in

the Housing Act or its implementing regulations.  Her § 1983 claim premised on the violation of

a right under federal law must be dismissed.

**B.**     **Section 1983 Claim Premised on Constitutional Rights**

In addition to rights under federal law, as discussed above, § 1983 creates a right of

action against anyone who, under color of state law, causes a person to be "depriv[ed] of any

rights, privileges, or immunities secured by the Constitution."  42 U.S.C. § 1983.  In her second

claim for relief, Davis alleges that by failing to maintain adequate heat in her apartment,

Defendants interfered with her rights to "bodily safety, integrity[,] and liberty" and her "property

interests" in her home, both in violation of substantive due process under the Fourteenth

Amendment.  (FAC ¶¶ 83–84.)

Defendants seek dismissal of this claim on three grounds: (1) the existence of a bar

_____

can create a federal right enforceable under § 1983.  (Dkt. No. 21 at 17.)  Although this was
previously an open question in the Circuit, *see D.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 513
(2d Cir. 2006), it has since been conclusively decided, *see Taylor*, 645 F.3d at 153; *Abrahams v.
MTA Long Island Bus*, 644 F.3d 110, 117–18, 120 n.7 (2d Cir. 2011).

against § 1983 claims under the Constitution being used to enforce statutes which themselves do not provide a cause of action; (2) the failure to challenge affirmative acts on the part of the state actors; and (3) the absence of any violation of a constitutional right. (Dkt. No. 23 at 11–18.)

### 1.      Lack of Relief Under Corresponding Federal Statutes

First, Defendants argue that the lack of an actionable federal right under § 1437 and § 1437d forecloses Davis from challenging the same underlying state action through a § 1983 claim premised on the deprivation of a constitutional right. (Dkt. No. 23 at 11–13.) Though somewhat confused, this argument seems to proceed in two steps: (a) the relief sought by Davis demonstrates that any claimed violation of due process is really an attempt to enforce 42 U.S.C. §§ 1437 and 1437d(l)(3) (Dkt. No. 23 at 11); and (b) where a statute limits the availability of relief, those limits cannot be circumvented by bringing claims styled as constitutional under § 1983 (*id.* at 11–12).

On the first step, however, the Court is not persuaded that the relief Davis seeks in her second claim is the "enforcement of a federal statute." (Dkt. No. 23 at 12.) Rather, the First Amended Complaint states that, as a result of the violation of the constitutional rights of Davis and the rest of the putative class, she and the putative "class members have been damaged in the form of economic loss of value of rent and pain and suffering from exposure to extreme cold within their residences." (FAC ¶ 94.) Subsequently, in the demand for relief, the complaint seeks in relevant part "[a]n award of back rent and other damages as proved at trial," and "[a]n award of punitive damages." (FAC at 17.)

This requested relief goes beyond the mere enforcement of § 1437 or § 1437d. And such damages are potentially both available and appropriate remedies for the deprivation of a constitutional right under § 1983. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (recognizing the availability of compensatory damages under § 1983); *Smith v. Wade*,

461 U.S. 30, 35–36 & n.5 (1983) (recognizing the availability of punitive damages against individual defendants under § 1983); *Carey v. Piphus*, 435 U.S. 247, 264 (1978) ("[M]ental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983 . . . [with] proof that such injury actually was caused.").

Furthermore, Defendants are also tripped up by the second step of their argument. As Davis recognizes, the cases on which Defendants rely stand for the proposition that a plaintiff "cannot circumvent the remedial schemes provided for" in a statute "by artfully pleading the case only [under] Section 1983." (Dkt. No. 21 at 21.) In other words, these cases demonstrate the second condition for bringing suit under § 1983: Congress must not have "specifically foreclosed a remedy under § 1983," such as "by creating a comprehensive enforcement scheme that is incompatible with individual enforcement." *Blessing*, 520 U.S. at 341; *see, e.g.*, *Smith v. Robinson*, 468 U.S. 992, 1013 (1984) (holding that Congress intended the specific statute at issue to be "the exclusive avenue through which [plaintiffs] can pursue their claim"); *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20–21 (1981) (holding that the statute at issue included "comprehensive enforcement mechanisms," "demonstrat[ing] not only that Congress intended to foreclose implied private actions but also that it intended to supplant any remedy that otherwise would be available under § 1983").

Here, however, Defendants have not even attempted to show that the Housing Act created the kind of comprehensive enforcement scheme that would indicate Congress's intent to foreclose any challenges to the underlying conduct under § 1983—whether invoking statutory or constitutional rights. There is thus no demonstrated "limitation" in the statute that Davis is trying to "bypass" through a § 1983 claim premised on the deprivation of constitutional rights. (Dkt. No. 23 at 12.)

## 2.     Affirmative Conduct of State Actors

Defendants next argue that Davis fails to allege a substantive due process violation because this claim is premised on NYCHA's *failure* to act, rather than any *affirmative* actions. (Dkt. No. 23 at 15.)

As the Second Circuit has recognized, "[o]nly an affirmative act can amount to a violation of substantive due process, because the Due Process Clause 'is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.'" *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)).  Nevertheless, "[i]n exceptional circumstances" the State's failure to act may be actionable, such as where "a governmental entity [has] a constitutional obligation to provide" protection from harm "either because of a special relationship with an individual, or because the governmental entity itself has created or increased the danger to the individual."  *Id.* at 79 (quoting *Ying Jing Gan v. City of New York*, 996 F.2d 522, 533 (2d Cir. 1993)).

To determine whether Davis has adequately challenged Defendants' affirmative acts, the Court looks to the allegations in the First Amended Complaint.  The complaint alleges that NYCHA engages in three policies or practices that caused the heating crisis.  First, NYCHA "maintain[s] boiler maintenance staffing at levels that are woefully insufficient to meet seasonal emergency repair demand" (FAC ¶ 39), which involved reassigning "more than 100 boiler maintenance staff to other positions without replacement" and failing to "respond[] to emergency heating repair requests" (FAC ¶¶ 40–42).  Second, the complaint alleges that "Olatoye and NYCHA maintain a policy of prematurely closing heating maintenance request tickets in order to create the appearance that NYCHA is far more responsive to such emergency requests than it actually is, obscuring the full extent of the crisis from the public and lawmakers."  (FAC ¶ 45.)

Under this "code of silence," Olatoye and NYCHA are alleged to have "instruct[ed] their employees to mark heating maintenance request tickets as closed within hours of being opened, with a notation that heat was restored, when in fact heat was not restored and no effort was made to address the complaint." (FAC ¶ 46.) Third, the complaint alleges that "NYCHA and Olatoye engage in a policy of failing to adequately train employees at all levels to respond to complaints of inadequate heat." (FAC ¶ 50.)

Defendants contend that these allegations fail to adequately allege affirmative acts on the part of NYCHA and Olatoye, or to satisfy the "state created danger" or "special relationship" exceptions to the rule that the state's failure to protect an individual from harm does not ordinarily implicate substantive due process. (Dkt. No. 23 at 15–17.)

With respect to whether Davis alleges that NYCHA and Olatoye engaged in affirmative acts to infringe her constitutional rights, Defendants acknowledge that the complaint alleges certain affirmative acts in the form of a "code of silence." (Dkt. No. 23 at 15.) But they contend that the "code of silence" allegations are insufficient to support liability for substantive due process violation for two reasons: first, because the "code of silence" allegations are "conclusory" and "devoid of any pleaded foundation in fact" (*id*.); and second, because any deprivation of a right was caused by the failure to act to *repair* boilers and maintain heat, not by the existence of a *cover-up* (*id*.).

As to the first argument, the Court disagrees. Although Davis pleads the existence of this policy "on information and belief" (FAC ¶ 46), such allegations can satisfy the pleading threshold when the facts alleged are "peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal

citation omitted). Both circumstances obtain here. Facts supporting the existence of such a policy are uniquely within the possession of Defendants. And Davis pleads facts creating a foundation for her belief in the existence of this policy, namely past fabrications of lead inspection records and mayoral statements lauding the agency's responsiveness that contrast with Davis's personal experience. (FAC ¶¶ 20, 23, 47–48.)

On the second point, Davis argues that "[b]ut for Defendants' cover-up and 'Code of Silence,' the heating systems associated with the homes of Plaintiff and other class members would have been timely repaired, and they would not have been subjected to such harm." (Dkt. No. 21 at 9.) And the complaint itself alleges that the practice of "mark[ing] heating maintenance request tickets as closed" without actually restoring heat had the effect of "depriving residents like Plaintiff the actual repair services they require." (FAC ¶ 46; *see* FAC ¶ 88.) These allegations are sufficiently plausible to survive a motion to dismiss. If requests for heating repairs were prematurely closed, the ticket would not be pending in the request system to be addressed in due course; and the lack of pending requests in the system, coupled with artificially short turn-around times, would obscure the problem from city officials who could have stepped in to ensure that heating was restored. (*See* FAC ¶¶ 48–49.)

Defendants respond by briefly questioning whether the alleged "cover up" actions will ultimately be able to satisfy the requirement that the affirmative acts challenged were the cause of the complained-of constitutional deprivations. (Dkt. No. 25 at 8.) The Court recognizes that Davis may face a heavy burden of demonstrating causation at a later stage of this litigation. However, for the purposes of the motion to dismiss, Davis has sufficiently pleaded both affirmative acts on the part of state actor Defendants, and that those acts caused the claimed

deprivation of rights, which the Court now turns to.[5]

### 3. Violation of Constitutional Rights

Finally, Defendants argue that Davis has failed to establish the violation of any constitutional rights, as is required for a § 1983 claimed premised on the deprivation of rights secured under the Constitution. (Dkt. No. 23 at 13–14.) In the First Amended Complaint, Davis premises this claim on the violation of her substantive due process rights under the Fourteenth Amendment. (FAC ¶ 83.) To adequately plead a substantive due process violation, a plaintiff must allege: (1) the infringement of a right protected by substantive due process; and (2) that the conduct of the state actor was sufficiently "egregious" or "outrageous" to rise to the level of a constitutional violation. *See Masciotta v. Clarkstown Cent. Sch. Dist.*, 136 F. Supp. 3d 527, 542 (S.D.N.Y. 2015) (quoting *Lombardi*, 485 F.3d at 79); *49 WB, LLC v. Vill. of Haverstraw*, 511 F. App'x 33, 34 (2d Cir. 2013).

Here, Davis alleges the infringement of two sets of rights that she alleges to be protected by substantive due process: "property interests" and "rights to bodily safety, integrity and liberty." (FAC ¶¶ 83–84, 89, 92.) The Court discusses each in turn.

### a. Property Interests

To show that the inadequate heating of her home "rises to the level of a substantive due process violation" vis-à-vis her property interests, Davis "must show that (1) [she] had 'a valid property interest' . . . , and that (2) the 'defendants infringed on the property right in an arbitrary or irrational manner.'" *49 WB, LLC*, 511 F. App'x at 34 (quoting *Cine SK8, Inc. v. Town of*

---

[5] Because Davis's substantive due process claims sufficiently challenge affirmative conduct of Defendants, the Court need not address the parties' arguments (Dkt. No. 23 at 16; Dkt. No. 21 at 5–10) regarding the application of the "state created danger" or "special relationship" exceptions to the rule that the state does not have a duty to protect individuals from private harm to Davis's allegations. *See Pena v. DePrisco*, 432 F.3d 98, 109 (2d Cir. 2005).

*Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007)).

"To have a property interest in a benefit, a person . . . [must] have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *see 49 WB, LLC v. Vill. of Haverstraw*, No. 08 Civ. 5784, 2012 WL 336152, at *6 (S.D.N.Y. Feb. 2, 2012). "Because the U.S. Constitution generally does not create property interests," the Second Circuit "looks to 'existing rules or understandings that stem from an independent source such as state law to determine whether a claimed property right rises to the level of a right entitled to protection under the substantive due process doctrine.'" *Cine SK8, Inc.*, 507 F.3d at 784 (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 130 (2d Cir. 1998)).

In response to the First Amended Complaint's allegation of infringed property interests, Defendants cursorily argue that there is "no constitutional right of access to housing of a certain quality." (Dkt. No. 23 at 13 (quoting *Citizens Comm. for Faraday Wood v. Lindsey*, 507 F.2d 1065, 1068 (2d Cir. 1974)).) But this argument does not dispose of Davis's claimed property-interest-based substantive due process violation. The Second Circuit case cited by Defendants for this proposition—*Citizens Committee for Faraday Wood*, 507 F.2d at 1068—involved an equal protection claim brought in a completely different context, and merely repeated the principle in *dicta*. The source of the principle, *Lindsey v. Normet*, 405 U.S. 56, 74 (1972), is equally unhelpful to Defendants. *Normet* stated the proposition in deciding an equal protection challenge to a state statute governing eviction of tenants by landlords—in other words, a very different circumstance from the invocation of property-based substantive due process rights here. Ultimately, even accepting the absence of an absolute "constitutional guarantee of access to dwellings of a particular quality," *Normet*, 405 U.S. at 74, this fact does not resolve whether residents of public housing have certain *property rights* in that housing.

The only other effort Defendants make to contest Davis's claimed property-right-based substantive due process violation is to cite *Paige v. New York City Housing Authority*, 2018 WL 1226024, at *4, for the proposition that § 1437d of the Housing Act does not create a property right on which Davis can base a due process claim.[6]  (Dkt. No. 23 at 13.)  But this argument ignores the extent to which Davis's property interest arises *not* from the Housing Act itself, but from the *contract* through which NYCHA leased the apartment to Davis.

As Davis notes (Dkt. No. 21 at 10–11), the Housing Act requires public housing authorities to enter into leases with tenants, and leases are contracts that give rise to property interests.  *See Dishi & Sons v. Bay Condos LLC*, 510 B.R. 696, 705 (S.D.N.Y. 2014) ("A lease is both a conveyance of an interest in property and a contract." (citing *219 Broadway Corp. v. Alexander's, Inc.*, 46 N.Y.2d 506, 509 (1979))).  Furthermore, these leases are required to contain certain terms "obligat[ing] the public housing authority to maintain the project in a decent, safe, and sanitary condition." 42 U.S.C. § 1437d(l)(3).[7]  Though these property interests arise under state law, rather than the Housing Act, they can nonetheless constitute "property interests for purposes of due process claims."  *King v. New York City Emps. Ret. Sys.*, 212 F. Supp. 3d 371, 401 (E.D.N.Y. 2016) (holding that state pension and retirement benefits are property rights protected by due process); *see Cine SK8, Inc.*, 507 F.3d at 784 (noting that the Second Circuit looks to state law to define property interests for the purpose of due process

---

[6]     Defendants' only argument against Davis's property-interest-based due process claim is made in one paragraph of their moving brief.  (Dkt. No. 23 at 13.)  Although Davis devoted over a page to the property-rights argument in her response (Dkt. No. 21 at 10–11), Defendants notably did not mention it in their reply (Dkt. No. 25).

[7]     Additionally, municipal law requires landlords to maintain certain minimum temperatures in dwellings from October through May.  N.Y.C. Admin. Code § 27-2029; N.Y.C. Health Code § 131.07(c).  But although Davis relies on these provisions elsewhere in her complaint (FAC ¶¶ 69–74), she does not specifically identify them as contributing to her claimed property interest (Dkt. No. 10–11).

claims).

Importantly, Defendants do not dispute that Davis's lease gives rise to property interests, that these interests are constitutionally cognizable under substantive due process, or that the interests were infringed by inadequate heating of Davis's home.[8] (*See* Dkt. No. 25; FAC ¶¶ 84, 92–94.) Therefore, for the purpose of Defendants' motion to dismiss, the Court concludes that Davis has adequately alleged the existence and infringement of a "valid property interest," *49 WB, LLC*, 511 F. App'x at 34 (citation omitted), sufficient to satisfy the first element of her property-rights-based substantive due process claim.

To satisfy the second element of this claim, Davis must plausibly allege that her property right was infringed "in an arbitrary or irrational manner." *Cine SK8, Inc.*, 507 F.3d at 784. In other words, the right must have been impaired "under circumstances warranting the labels 'arbitrary and outrageous,'" *49 WB, LLC*, 511 F. App'x at 34 (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999)), in a manner that "transgress[ed] the 'outer limit' of legitimate governmental action," *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 505 (2d Cir. 2001).

As relevant here, the First Amended Complaint alleges that the infringement of Davis's property interests was done "intentionally," "deliberately[,] and knowingly." (FAC ¶¶ 92–93.) Defendants argue that the complaint's bare allegation of intentional deprivation of property interests (FAC ¶ 92) is "unsupported by any facts pleaded in the Complaint and is insufficient"

---

[8]    A number of courts in this Circuit have recognized a principle whereby certain property interests, particularly certain contractual rights, do not rise to the level of *constitutionally cognizable* interests under the doctrine of substantive due process. *See, e.g.*, *Leder v. Am. Traffic Sols., Inc.*, 81 F. Supp. 3d 211, 224 (E.D.N.Y. 2015); *Gizzo v. Ben-Habib*, 44 F. Supp. 3d 374, 381–92 (S.D.N.Y. 2014). However, because Defendants do not contest whether Davis has adequately alleged the violation of constitutionally cognizable property interests through her lease, the Court does not assess the application of this principle here.

(Dkt. No. 23 at 17).[9]  But even assuming Defendants are correct, the complaint adequately

pleads other facts to satisfy this second element.

Focusing on the "code of silence" cover-up alone, the complaint plausibly alleges that

"Olatoye and NYCHA instruct[ed] their employees to mark heating maintenance request tickets

as closed within hours of being opened, with a notation that heat was restored, when in fact heat

was not restored and no effort was made to address the complaint, thus depriving residents like

Plaintiff the actual repair services they require."  (FAC ¶ 46.)  These actions were taken "in order

to create the appearance that NYCHA is far more responsive to such emergency requests than it

actually is," and had the effect of causing tenants' homes to remain in "an unheated,

uninhabitable condition."  (FAC ¶¶ 45, 92.)

Based on these allegations, the Court concludes that Davis has adequately pleaded

conduct from which a reasonable jury could find that Defendants "transgress[ed] the 'outer limit'

of legitimate governmental action."  *Harlen Assocs.*, 273 F.3d at 505.

### b.  Bodily Safety, Integrity, and Liberty

"Substantive due process protections extend only to those interests that are 'implicit in

---

[9]  As support for the argument that any deprivation of rights was not intentional,
Defendants rely on the contents of the settlement between the New York City Public Advocate
and Defendants that resolved an earlier litigation over inadequate heating in public housing.
(Dkt. No. 23 at 17 & n.3.)

However, courts cannot "consider matters outside the pleadings in deciding a motion to
dismiss for failure to state a claim."  *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
723 F.3d 192, 202 (2d Cir. 2013).  "A document is incorporated [into a pleading] by
reference"—and thus may be considered at the motion to dismiss stage—"when it is 'integral' to
the complaint."  *Fox v. Citizens Bank N.A.*, No. 17 Civ. 656, 2018 WL 1478046, at *3 (S.D.N.Y.
Mar. 26, 2018).  Although the First Amended Complaint refers to the existence of the settlement
(*see* FAC ¶¶ 30–31), it does not rely on the specific contents of that settlement.  The Court
concludes that the settlement document is not "integral" to the complaint and declines to
consider the document at this stage in the proceedings.

the concept of ordered liberty,' which are rights 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Smith v. Hogan*, 794 F.3d 249, 255–56 (2d Cir. 2015) (citations omitted). These interests include, "among other things, an individual's right to bodily integrity free from unjustifiable governmental interference." *Lombardi*, 485 F.3d at 79. And it is this variety of interest that Davis invokes in the second half of her constitutional § 1983 claim: the "rights to bodily safety, integrity and liberty." (FAC ¶ 89.)

In seeking dismissal of this half of the claim as well, Defendants repeat their argument that "there is no constitutional right to a heated apartment." (Dkt. No. 23 at 13; *see* Dkt. No. 25 at 5–6.) But again, the absence of such a right is beside the point.

Davis characterizes the right at issue as her right to bodily integrity, violated "by exposure to extreme cold in [her] home," which aggravated her "asthma[] and permanent injuries to her leg and hip." (FAC ¶¶ 89–91.) Defendants fail to explain why the Court should accept their general, affirmative formulation of the right at stake over Davis's negative formulation that corresponds more closely to the circumstances challenged and the injuries alleged. *See Guertin v. Michigan*, 912 F.3d 907, 921–22 (6th Cir. 2019) (defining the right at issue as freedom from bodily intrusion in case involving contaminated public water supply rather than the "fundamental right to water service" or the "right to live in a contaminant-free, healthy environment" (citations omitted)).

Furthermore, assuming that NYCHA's affirmative acts indeed caused the "extreme cold" in Davis's apartment, Defendants do not attempt to argue that the imposition of such freezing temperatures would *not* constitute an interference with bodily integrity. And there is a non-frivolous argument supporting Davis's position that subjecting individuals to extreme cold in their homes interferes with their bodily integrity. *Cf. Guertin*, 912 F.3d at 920–21

23

("Involuntarily subjecting nonconsenting individuals to foreign substances [in their water supply] with no known therapeutic value . . . is a classic example of invading the core of the bodily integrity protection."); *In re Cincinnati Radiation Litig.*, 874 F. Supp. 796, 810 (S.D. Ohio 1995) (subjecting patients to high levels of radiation without their consent violated the "right to be free of state-sponsored invasion of a person's bodily integrity").

As this is Defendants' motion to dismiss, the Court declines to construct arguments that they have not raised themselves. *See Vasquez v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 3674, 2015 WL 3619432, at *14 (S.D.N.Y. June 10, 2015) ("Courts generally deem an argument waived or abandoned if a party fails to make it."). At this stage of the case, then, Davis has sufficiently pleaded the first element of her liberty-interest-based substantive due process claim on the ground that NYCHA and Olatoye's underlying conduct infringed her right to bodily integrity.

Under the second element, in order for the interference with Davis's bodily integrity to constitute a substantive due process violation, the state action at issue must "fairly be said to shock the contemporary conscience." *Lombardi*, 485 F.3d at 79 (citation omitted). Official conduct "shocks the conscience" where it is "outrageous and egregious under the circumstances; it must be truly 'brutal and offensive to human dignity.'" *Id.* at 81 (citation omitted). Whereas "'negligently inflicted harm is categorically beneath the threshold,' . . . conduct exhibiting 'deliberate indifference' to harm can support a substantive due process claim" under the right circumstances. *Id*. at 82 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849–50 (1998)).

Davis argues that the conduct here shocks the conscience due to three factors: (i) the "inhumane" conditions to which residents without adequate heating are subjected, with reference to statements of public officials and news articles decrying the conditions (Dkt. No. 21 at 7; FAC ¶¶ 33–36); (ii) the fact that Defendants were previously sued and recently reached a settlement

on the issue of heating in public housing, and yet have failed to correct the issue (Dkt. No. 21 at 7; FAC ¶¶ 29–31); and (iii) the fact that Defendants' actions were not the short-term product of an emergency, but rather were deliberate and have subjected Davis to habitation in freezing temperatures for years (Dkt. No. 21 at 7; FAC ¶¶ 25–26).

In response, Defendants contend that the minimal physical injuries suffered by Davis are not of "constitutional proportions." (Dkt. No. 23 at 14.) The severity of the physical injury sustained, however, is not dispositive; rather, courts must engage in an "exact analysis of [the] circumstances," with a concentration on the "official conduct" being challenged. *Lombardi*, 485 F.3d at 81–82 (citation omitted).

Defendants also briefly assert that any alleged harm was only "negligently inflicted." (Dkt. No. 23 at 18.) The Court disagrees.

The First Amended Complaint plausibly alleges that "NYCHA was previously the subject of home heating litigation, ending in an agreement by NYCHA to maintain adequate heating standards and retrain employees." (FAC ¶ 29.) Nevertheless, the winter "after the expiration of that agreement," another heating crisis occurred (FAC ¶ 31) due to insufficient staffing, inadequate training, and the agency's "code of silence" policy (FAC ¶¶ 39–53). The recurrent nature of the heating problems in the city's public housing, and NYCHA's awareness of the problems, demonstrate that the state actors here had "time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." *Lombardi*, 485 F.3d at 82 (quoting *Cty. of Sacramento*, 523 U.S. at 853).

Moreover, in affirmatively acting to conceal the extent of the crisis, as alleged, NYCHA and Olatoye did not "choose the least of evils" while beset with "conflicting obligations." *Id.* Instead, the choice was between allowing ticket requests for repairs to amount and be (slowly)

addressed in due course—which would alert city officials to the extent of the heating crisis—or to prematurely close tickets and not address requests—concealing the extent of the crisis. Olatoye and NYCHA allegedly chose the latter, which did not appear to serve any identifiable governmental interest and by which they knowingly subjecting tenants to freezing temperatures. (*See* FAC ¶¶ 46, 88.)

Making such a choice and engaging in the alleged cover-up, in the face of a long-standing heating problem—knowing that the conduct contributed to the continuation of conditions that would constitute cruel and unusual punishment if imposed on incarcerated persons, *Bristol v. Prob. Dep't of Nassau Cty.*, No. 14 Civ. 6647, 2016 WL 873336, at *8 (E.D.N.Y. Mar. 8, 2016) (collecting cases)—evidences the kind of deliberate indifference that shocks the conscience. The Court concludes that Davis has adequately pleaded this second element of her substantive due process claim premised on the interference with her right to bodily integrity.

\* \* \*

In summary, Davis has adequately pleaded the second claim in the First Amended Complaint—the deprivation of constitutional rights actionable under § 1983—as to the alleged violation of substantive due process regarding both her property interests and her right to bodily integrity. Defendants' motion to dismiss this claim is thus denied.

### C. Declaratory Judgment Claim

In her third and final claim in the First Amended Complaint, Davis seeks a "declaration that [her] federal right[] to public housing in compliance with applicable local and federal regulations regarding minimum temperature [has] been violated," and that she is entitled to withhold rent to be used for repairs. (FAC ¶ 99.) Defendants argue that this claim must be dismissed for lack of subject matter jurisdiction if the Court concludes, in assessing Davis's first § 1983 claim, that there is no private right to enforce § 1437 or § 1437d of the Housing Act in

federal court. (Dkt. No. 23 at 10.)

Davis does not address this argument in her response brief, or mention her declaratory judgment claim in any capacity. "Courts may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Felix v. City of New York*, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018) (internal quotation marks and citation omitted). Accordingly, Davis's failure to respond to Defendants' motion to dismiss her declaratory judgment claim constitutes abandonment. The declaratory judgment claim is therefore dismissed.

### D. Claims Against Defendant Olatoye

Defendants also seek the dismissal of Davis's claims against Defendant Olatoye in her personal capacity. (Dkt. No. 23 at 18–19.) "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (citation omitted). "An individual cannot be held liable for damages under § 1983 'merely because he held a high position of authority,' but can be held liable if he was personally involved in the alleged deprivation." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (citation omitted). The personal involvement of an individual defendant can be shown by:

> evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Back*, 365 F.3d at 127 (ellipsis in original) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

Defendants argue in cursory fashion that the claims against Defendant Olatoye must be dismissed because "the only allegations regarding Ms. Olatoye's personal conduct are entirely conclusory." (Dkt. No. 23 at 18.) Davis counters that the First Amended Complaint contains sufficient allegations pertaining to Olatoye's personal involvement in the conduct underlying the § 1983 claims. (Dkt. No. 21 at 23–24; *see* FAC ¶¶ 41, 45–49, 77.)

Indeed, the complaint alleges at various points that Olatoye "participated directly in the alleged constitutional violation," or "created a policy or custom under which unconstitutional practices occurred." *Colon*, 58 F.3d at 873. The Court concludes that these facts are sufficiently well pleaded to plausibly allege Olatoye's personal involvement in the challenged conduct, such that dismissal of the claims against the individual Defendant is inappropriate at this stage.

### E.      Punitive Damages

Finally, Defendants seek dismissal of the demand for punitive damages in the First Amended Complaint. (Dkt. No. 23 at 19; FAC at 17.) Defendants are correct that the Supreme Court has foreclosed the possibility of receiving punitive damages from a municipality defendant in an action under § 1983. *See Smith*, 461 U.S. at 36 n.5 (citing *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981)). However, the Supreme Court has expressly permitted the award of punitive damages against an individual public officer in an action under § 1983. *Id*. at 35–36. Because the Court allows the constitutional claims against Defendant Olatoye to proceed, punitive damages remain a potential remedy in this case. There is thus no cause to dismiss that particular demand for relief from the operative complaint at this time.

**IV.    Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and

DENIED in part.

Defendants shall file an answer to the remaining claims within 14 days of the date of this

Opinion and Order.

The Clerk of Court is directed to close the motions at Docket Numbers 18 and 22.

SO ORDERED.

Dated:  March 29, 2019
        New York, New York

_____
            J. PAUL OETKEN
        United States District Judge